

Frank Rangoussis (*Pro Hac Vice*)
Attorney for Plaintiff
U.S. Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, NW
Washington, DC 20581
Telephone: (202) 418-5375
Facsimile: (202) 418-5531

FRANK N. MASINO, Esq. (Bar No. 157708)
Law Offices of Frank N. Masino
Seventy Sonora Way
Corte Madera, California 94925
Tele: (415) 927-3038
Fax: (415) 927-3038
Attorney for Defendant William Whyte

LODGED
NOV 30 2004
CLERK, U.S. DISTRICT COURT
SOUTHERN DIVISION AT SANTA ANA
BY

FILED
CLERK, U.S. DISTRICT COURT
DEC - 1 2004
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

ORIGINAL

Priority      X
Send          X
Enter         X
Closed
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

U. S. Commodity Futures Trading Commission,

                    Plaintiff,

        v.

FX FIRST, Inc., Alexey Mironov, and William Whyte,

                    Defendants.

Case No. SACV 03-1454-JVS (MLGx)

CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AGAINST DEFENDANT WILLIAM WHYTE

ENTERED
CLERK, U.S DISTRICT COURT
DEC - 3 2004
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

I.

INTRODUCTION

On October 6, 2003, Plaintiff, the United States Commodity Futures Trading

Commission ("CFTC" or the "Commission"), filed a complaint against Defendants FX First, Inc. ("FX First"), Alexey Mironov ("Mironov") and William Whyte ("Whyte") (collectively "Defendants") alleging violations of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1 *et seq.* (2001) and Commission Regulations, 17 C.F.R. §§ 1 *et seq.* (2002).  On October 15, 2003, this Court entered an Order of Preliminary Injunction Enjoining Defendants From Violating the Commodity Exchange Act.  Entry of this Consent Order of Permanent Injunction and Other Equitable Relief will conclude this action against Defendant Whyte.

II.

CONSENTS AND AGREEMENTS

In accordance with his written consent, made a part of this Order, and to effect settlement of this action without a trial on the merits or further judicial proceedings, Defendant Whyte:

1.      Consents to entry of this Consent Order of Permanent Injunction and Other Equitable Relief Against Defendant William Whyte ("Order");

2.      Affirms that he has read and agreed to this Order voluntarily, and that no promise or threat has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Order, other than as set forth specifically herein;

3.      Acknowledges service upon him of the summons and complaint in this action;

4.     Admits that this Court possesses personal and subject matter jurisdiction over him and this action;

5.     Admits that venue properly lies with this Court; and

6.     Waives:

a.     Entry of findings of fact and conclusions of law pursuant to FRCP 52, except as set forth below;

b.     All claims that he may possess pursuant to the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 (2000) and 28 U.S.C. § 2412 (2000), and Part 148 of the CFTC's Regulations, 17 C.F.R. § 148.1 *et seq.*, relating to or arising from this action;

c.     Any claim of double jeopardy based on the institution of this proceeding or the entry in this proceeding of any order imposing injunctions or any other relief; and

d.     All rights of appeal from this Order.

The parties acknowledge and state that, in consenting to entry of this Order, Defendant Whyte neither admits nor denies the allegations of the CFTC's complaint or the findings of fact and conclusions of law made by this Court except as to jurisdiction and venue, and that consent to its entry is made solely for the purpose of settling this action as to Defendant Whyte.

Defendant Whyte further agrees that:

1.     He will not take any action to make or permit to be made any public

statement denying, directly or indirectly, any allegation in the complaint or

findings or conclusions in this Order, or creating, or tending to create, the

impression that any allegation in the complaint or this Order is without

factual basis;

2.     No agent or employee of Defendant Whyte acting under his authority

or control shall take any action to make or permit to be made any public

statement denying, directly or indirectly, any allegation in the complaint or

findings or conclusions in this Order, or creating, or tending to create, the

impression that any allegation in the complaint or this Order is without

factual basis; and

3.     He shall take all steps necessary to ensure that all of his agents and

employees understand and comply with this Order.

However, it is understood and agreed that nothing in these provisions shall affect

Defendant Whyte's testimonial obligations, or his right to take legal positions or assert

factual defenses in other proceedings and actions to which the CFTC is not a party.

Defendant Whyte consents to the continued jurisdiction of this Court for the

purpose of enforcing the terms and conditions of this Order and for any other purposes

relevant to this case.

### III.

### FINDINGS AND CONCLUSIONS

It further appearing to this Court that there is no just reason for delay, the Court

being fully advised in the premises and the Court finding that there is just cause for entry

of this Order that fully disposes of all issues in this matter pertaining to Defendant

Whyte, THE COURT FINDS THAT:

A.    Jurisdiction and Venue

1.    This Court has jurisdiction over the subject matter of this action

pursuant to § 6c of the Act, 7 U.S.C. § 13a-1 (2001), which authorizes the

CFTC to seek injunctive relief against any person whenever it shall appear

that such person has engaged, is engaging or is about to engage in any act or

practice constituting a violation of any provision of the Act or any rule,

regulation or order thereunder;

2.    This Court has personal jurisdiction over Defendant Whyte and he

has waived service of summons and complaint and consented to the Court's

jurisdiction over him;

3.    Venue properly lies with this Court pursuant to § 6c of the Act, 7

U.S.C. § 13a-1, in that Defendant Whyte is found in, inhabits, or transacts

business in this district, and the acts and practices in violation of the Act

alleged in the complaint have occurred within this district, among other

places.

B.    Parties to This Order

4.    Plaintiff, the CFTC, is the independent federal regulatory agency

charged with the administration and enforcement of the Act, 7 U.S.C. §§ 1 *et*

*se.,* and the Regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.*

5.      Defendant Whyte is an individual who lives at 17181 Marina View Place, Huntington Beach, CA 92649.  He is president and a principal of Defendant FX First, Inc. ("FX First").  He registered with the CFTC on June 26, 2003, as an Associated Person ("AP") of FX First, which was itself registered with the CFTC as a Futures Commission Merchant ("FCM") on June 26, 2003.

C.      Background

6.      FX First is a California corporation whose principal place of business was located at 5000 Birch Street, Suite 9600, Newport Beach, California 92660.  FX First incorporated in January 2001 as "First Financial Exchange."  In January 2003, the Articles of Incorporation of First Financial Exchange were amended to change the name of the corporation to "FX First, Inc."

7.      FX First offered its customers the opportunity to trade foreign currency ~~futures~~ contracts.  FX First previously maintained a web site that described the foreign currency market, and how to trade foreign currency.  FX First acted as the counter party to the foreign currency trades executed by its customers.  FX First profited from the spread it created between buy and sell prices in the foreign currency contracts it offered to its different customers.

D.   <u>Failure to Maintain Net Capital Requirements</u>

8.     Pursuant to § 4f(b) of the Act and CFTC Regulation § 1.17(a)(1), FX First was required to maintain a minimum net capital to operate as an FCM. According to CFTC Regulation § 1.17(c)(1), "net capital" means the amount by which current assets exceed liabilities.  Pursuant to CFTC Regulation § 1.17(a)(1)(i)(A), FX First was required to maintain a minimum adjusted net capital of at least $250,000 in order to act as an FCM.

9.     On or about August 11, 2003, the National Futures Association ("NFA"), an industry self-regulatory organization instituted and operating under the Act, commenced an audit of FX First's operations.  During this audit, NFA determined that as of July 31, 2003, FX First for purposes of its adjusted net capital calculation had included $2,062,500 purportedly located in an account in the name of FX First at Neftyanoy Bank in Russia.

10.    On August 19, 2003, NFA informed FX First that the firm's inclusion in its adjusted net capital calculation of the funds it purportedly maintained in Russia was inconsistent with CFTC Regulations, and that, after excluding those funds from its adjusted net capital calculation, FX First's adjusted net capital was below the minimum requirement by more than $2,000,000.

11.    At various times between August 19, 2003, and September 10, 2003, NFA informed FX First that it was required to transfer funds into an

account that met the requirements of CFTC Regulation § 1.17(b)(1) (such as

a major money market center) in order to meet its minimum net capital

requirements. During this time, FX First repeatedly promised to transfer its

funds from Russia to the United States. Despite these repeated assurances,

FX First not only failed to transfer funds from Russia to the United States, it

also transferred the money from its account in Neftyanoy Bank in Russia to

the account of another corporation, leaving a zero balance in the FX First

account at Neftyanoy Bank in Russia. On at least three occasions, before

the money was transferred, FX First represented that the funds were subject

to a withdrawal restriction and could not be transferred from the Neftyanoy

Bank in Russia to a major money market. FX First indicated that the bank

could not transfer the funds because of a special license, which neither FX

First, nor the bank possessed. In addition, FX First stated that the funds

could not be withdrawn from the account because of a prearranged

agreement between Neftyanoy Bank and the source of the funds, Alexander

Gontchar. In addition, after the funds were transferred, FX First has been

unable to obtain information concerning the location of the funds or the

purpose of the transfer, rendering the assets doubtful of collection.

12.    As of September 26, 2003, FX First had a liability of more than $2.2

million by virtue of its obligations to approximately 313 customers.

However, FX First had assets totaling only approximately $330,000 located

in the United States.

13.    On September 11, 2003, the NFA issued a Member Responsibility Action ("MRA") against FX First in which the NFA alleged that FX First had failed to demonstrate that it was in full compliance with NFA's capital requirements.  Pursuant to this MRA, FX First was prohibited from, among other things: distributing or transferring funds, except to existing customers; soliciting or accepting customer funds; and accepting or placing trades for customer accounts except for the rollover of current customer positions or liquidation of customer positions.

14.    On September 23, 2003, the NFA issued an amended MRA against FX First which, among other things: suspended FX First from NFA membership; prohibited FX First from transferring funds without NFA approval, including transfers to customers; and ordered FX First to liquidate all currently existing positions.  This amended MRA also noted that FX First was in violation of the prohibition against disbursement of funds set forth in the original MRA.

15.    CFTC Regulation § 1.17(a)(4) required FX First, to stop operating as an FCM, and to transfer all customer funds to customers or to another registered FCM after it fell below the adjusted net capital requirements set forth in § 1.17(a)(1)(i)(A).  FX First failed to transfer customer funds to customers or to a registered FCM, and thus continued to operate as an FCM

despite not being in compliance with minimum capitalization requirements. In fact, after initially agreeing to wire money to customers, FX First contacted the Union Bank in Los Angeles, California ("Union Bank") and cancelled its wire transfer to customers; instead, FX First maintained customer funds in its account at the Union Bank.

E.   Misappropriation of Customer Funds

16.   When opening a FX First account, customers were required to send their funds to an account held in the name of FX First at the Union Bank.

17.   Once customer funds were deposited in this initial account at Union Bank, FX First transferred customer funds into its operating account. After such transfer, FX First used the majority of these customer funds to pay its own operating expenses such as rent, legal bills and employee salaries and benefits. FX First also sent the funds offshore to Russian corporations. In addition, between September 17, 2003, and September 29, 2003, at least 36 FX First customers demanded payment from FX First of their funds that were due and owing, totaling approximately $159,341.19. FX First refused to pay the customers and instead maintained the funds in its account at the Union Bank of California.

18.   On or about September 26, 2003, with full knowledge of the CFTC's impending legal action. FX First further depleted customer funds by transferring all remaining funds held by FX First at Neftyanoy Bank in

Russia to the account of another corporation.  In this way, FX First

misappropriated a total of more than $2.2 million in customer funds.

F.   Defendant Whyte is a Controlling Person of FX First as Defined by the Act

19.   Defendant Whyte is listed as the president and CEO, and as a

principal of FX First.  He is registered with the CFTC as an AP of the firm.

He is also a signatory on bank accounts held in the name of FX First and

was responsible for day-to-day operations of the firm, such as hiring and

firing employees and supervising and training employees.  He was further

responsible for coordinating financial matters involving the firm.  As such,

Defendant Whyte is a controlling person of FX First.

20.   Whyte directly or indirectly controlled FX First and knowingly

induced, directly or indirectly, the acts constituting FX First's violations of

the Act and Regulations, and thereby is also liable pursuant to Section 13(b)

of the Act, 7 U.S.C. § 13c(b) (2001) for FX First's violations of §§

~~4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) § 4f(b) of the~~

~~Act, 7 U.S.C. § 6f(b), and CFTC Regulation §§ 1.17(a)(1) and (4), 17 C.F.R.~~

~~§§ 1.17(a)(1) and (4) (2003).~~

G.   Defendants' Foreign Currency Contracts Constitute Futures Contracts

21.   Sections 2(c)(2)(B)(i) and (ii) of the Act, 7 U.S.C. § 2, provide that

the CFTC shall have jurisdiction over an agreement, contract or transaction

in foreign currency that is a sale of a commodity for future delivery, so long

as the contract is "offered to, or entered into with, a person that is not an eligible contract participant" unless the counter-party, or the person offering to be the counter-party, is a regulated entity, as defined in the Commodity Futures Modernization Act.  Section 2(c)(2)(C) of the Act grants the CFTC jurisdiction over the fraudulent conduct of FCMs, ~~such as FX First,~~ committed in connection with foreign currency futures transactions.

22.    Section 1a(12)(A)(xi) of the Act, 7 U.S.C. § 1, defines an eligible contract participant as an individual who has total assets in excess of: (a) $10 million, or (b) $5 million and who enters the transaction to manage the risk associated with an asset owned or a liability incurred, or reasonably likely to be owned or incurred.  All of the foreign currency transactions alleged herein were offered to or entered into with persons who were not eligible contract participants.  In addition, FX First is a registered FCM which committed fraud in connection with foreign currency futures contracts, and is thus subject to CFTC jurisdiction pursuant to § 2(c)2(C) of the Act.

~~23.    The foreign currency contracts marketed by FX First concern the purchase or sale of commodities for future delivery at prices or using pricing formulas that are established at the time the contracts are initiated, and may be fulfilled through offset, cancellation, cash settlement or other means to avoid delivery.~~

12

24.     FX First marketed these contracts to the general public.  Those customers who purchased these ~~futures~~ contracts had no commercial need for the foreign currency involved.  Instead, those customers entered into the transactions to speculate and profit from anticipated price fluctuations in the markets for the foreign currencies involved.

25.     FX First customers did not anticipate - and did not take - delivery of the foreign currencies they purchased as a consequence of these investments.  If the market moved in a favorable direction, a FX First customer expected to liquidate his or her investment by authorizing the sale of the contract(s) and taking profits.

26.     FX First customers did not negotiate individual purchase agreements for their contracts.  The amount of currency per contract, rules for margin calls, and other terms and conditions of FX First's contracts, as set by FX First, are standardized.  Contracts sold by FX First required customers to pay a predetermined portion of the total contract price as a "margin" payment when the contract was purchased, and required customers to make additional "margin" payments if adverse changes in the market price of the underlying currencies cause the equity in their respective accounts to fall below a specified percentage.

H.      Violations of §§ 4b(a)(2)(i) and (iii) of the Act: Fraud by Misappropriation in the Sale of Off-Exchange Futures Contracts

27.    From at least September 26, 2003, through the present, FX First, in or in connection with orders to make, or the making of, contracts of sale of commodities for future delivery, made or to be made, for or on behalf of any other persons, where such contracts for future delivery were or could be used for the purposes set forth in § 4b(a) of the Act, 7 U.S.C. § 6b(a), has: (i) cheated or defrauded or attempted to defraud other persons; and (ii) willfully deceived or attempted to deceive other persons, all in violation of §§ 4b(a)(2)(i) and (iii) of the Act, & U.S.C. §§ 6b(a)(i) and (iii).

28.    Whyte directly or indirectly controlled FX First and knowingly induced, directly or indirectly, the acts constituting FX First's violations of the Act, and thereby is also liable for FX First's violations of §§ 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii), pursuant to § 13(b) of the Act, 7 U.S.C. § 13c(b) (2001).

I.    <u>Violations of § 4f(b) of the Act and CFTC Regulations 1.17(a)(1) and (4):
Failure to Maintain Required Minimum Net Capital and Operating While
Undercapitalized</u>

29.    Since at least July 31, 2003, FX First failed to maintain the prescribed minimum financial requirements for FCMs registered with the CFTC in violation of § 4f(b) of the Act and CFTC Regulation § 1.17(a)(1).

30.    Whyte directly or indirectly controlled FX First and knowingly induced, directly or indirectly, the acts constituting FX First's violations of

the Act, and thereby is also liable for FX First's violations of § 4f(b) of the

Act, 7 U.S.C. § 6f(b), and CFTC Regulation §§ 1.17(a)(1) and (4), 17 C.F.R.

§§ 1.17(a)(1) and (4) (2003), pursuant to § 13(b) of the Act, 7 U.S.C. §

13c(b) (2001).

IV

ORDER FOR PERMANENT INJUNCTION

The injunctive provisions of this Order shall be binding upon Defendant Whyte,

any person insofar as he or she is acting in the capacity of officer, agent, servant, or

attorney of Defendant Whyte, and any person who receives actual notice of this Order by

personal service or otherwise insofar as he or she is acting in active concert with or

participation with Defendant Whyte.

**IT IS HEREBY ORDERED THAT**:

Defendant Whyte is permanently restrained, enjoined, and prohibited from directly

or indirectly:

1. Cheating or defrauding or attempting to cheat or defraud other

persons, willfully deceiving or attempting to deceive other persons by

making false, deceptive or misleading representations of material facts, by

failing to disclose material facts, and by misappropriating customer funds in

or in connection with orders to make, or the making of, contracts of sale of

commodities for futures delivery, made or to be made for or on behalf of

any other person in violation of § 4b(a) of the Act, 7 U.S.C. § 6b(a);

2.    Operating as a FCM while undercapitalized in violation of § 4f

of the Act, 7 U.S.C. § 6f and CFTC Regulation §§ 1.17(a)(1) and (4), 17

C.F.R. §§ 1.17(a)(1) and (4) (2003);

3.    Engaging in, controlling, or directing the trading of any futures

or options accounts for or on behalf of any other person or entity, whether

by power of attorney or otherwise; and

4.    Applying for registration, seeking exemption from registration,

engaging in any activity requiring registration or exemption from

registration, except as provided for in § 4.14(a)(9) of the CFTC's

Regulations, or acting in any such capacity or affiliate in any such way with

any individual or entity that is registered, is required to be registered, or is

exempt from registration with the CFTC, except as provided for in §

4.14(a)(9) of the CFTC's Regulations, or is acting in any capacity requiring

registration with the CFTC or exemption from registration, except as

provided for in § 4.14(a)(9) of the CFTC's Regulations.

V

OTHER PROVISIONS

**IT IS FURTHER ORDERED THAT:**

1.    <u>Defendant Whyte's Cooperation with the CFTC</u>:    Defendant Whyte shall

cooperate fully and expeditiously with the CFTC and its staff, including the Division of

Enforcement, in this proceeding, and in any investigation, civil litigation, criminal

investigation or administrative enforcement matter related to the subject matter of this proceeding and any current or future CFTC investigation related to this matter. Defendant Whyte agrees to cooperate fully and expeditiously with the CFTC's ongoing efforts to discover documents and information related to the misappropriation of customer funds by FX First, its employees and principals and its operation as a Futures Commission Merchant while undercapitalized.  As part of such cooperation, Defendant Whyte agrees to:

     1.     Preserve all records under his control relating to the subject matter of this proceeding, including but not limited to audio files, electronic mail, and trading records; and

     2.     Comply fully, promptly, and truthfully with any inquiries or requests for information including but not limited to:

         a.     Requests for authentication of documents;

         b.     Requests for any documents within Defendant Whyte's possession, custody, or control, including inspection and copying of documents;

         c.     Requests to produce any current (at the time of the request) officer, director, employee, or agent of Defendant Whyte, regardless of the employee's location and at such location that minimizes CFTC travel resources, to provide assistance at any trial, proceeding,

or CFTC investigation related to the subject matter of

this proceeding, including but not limited to, requests for

testimony, depositions, and/or interviews, and to

encourage them to testify completely and truthfully in

any such proceeding, trial, or investigation;

d.      Testifying truthfully and consistently at any

proceeding or hearing, including a trial of this matter at

the request of the CFTC's Division of Enforcement; and

e.      Being reasonably available to answer any and all

questions posed by CFTC staff relating to this action and

undertake reasonable efforts to obtain information

requested by CFTC staff.

Defendant Whyte also agrees that he will not undertake any act that would limit

his ability to cooperate fully with the CFTC.  Defendant Whyte designates Frank N.

Masino, Esq., of 70 Sonora Way, Corte Madera, California 94925, to receive all requests

for information pursuant to this undertaking.  Should Defendant Whyte seek to change

the designated person to receive such requests, notice shall be given in writing to the

Division of Enforcement of such intention 14 days before it occurs.  Any person

designated to receive such request shall be located in the United States.

2.      Jurisdiction of This Court:      This Court shall retain jurisdiction over this

Defendant to assure compliance with this Order and for all other purposes related to this

action.

     3.    <u>Waiver</u>:    The failure of any party to this Order at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Order. No waiver in one or more instances of the breach of any provision contained in this Order shall be deemed or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Order.

     4.    <u>Successors and Assigns</u>: This Order shall inure to the benefit of and be binding upon the successors, assigns, heirs, beneficiaries, and administrators of all parties to this Order.

     5.    <u>Acknowledgments</u>:    Upon being served with a copy of this Order after entry by this Court, Defendant Whyte shall sign an acknowledgment of service and serve such acknowledgment on this Court and the CFTC within seven (7) calendar days.

     6.    <u>Invalidation</u>:    If any provision, or the application of any provision of this Order is held invalid, the remainder of the Order and the application of the provision to any other person shall not be affected by the holding.

7.   Integration:  This Order incorporates all of the terms and conditions of the settlement of the parties to this Order.  Nothing shall serve to amend or modify this Order in any respect, unless (1) reduced to writing, (2) signed by all parties hereto, and (3) approved by further Order of this Court.

**Done and Ordered this** _1st_ **day of** _December,_ **2004, at** _Santa Ana_ **, California.**

_____
James V. Selna
**UNITED STATES DISTRICT JUDGE**

**Consent Order of Permanent Injunction and Other Equitable Relief Against Defendant William Whyte consented to and approved for entry by:**

_____
William Whyte
Dated: ___11/17/___ , 2004

_____
Frank N. Masino, Esq.
Attorney for Defendant William Whyte
Law Offices of Frank N. Masino
70 Sonora Way
Corte Madera, CA 94925
(415) 927-3038 (telephone and fax)
Date: ___Nov. 12___ , 2004

1

2
Frank Rangoussis, Esq. (pro hac vice)

3
Attorney for Plaintiff

4
U. S. Commodity Futures Trading Commission
Three Lafayette Centre

5
1155 21st Street, N.W.

6
Washington, D.C. 20581
(202) 418-5375 (telephone)

7
(202) 418-5531 (fax)

8
Date: _November 10_ , 2004

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28